EVANDER, J.
After an evidentiary hearing, appellant was found to have violated his community control and sentenced to five years in prison. We reverse.
*115 The amended affidavit of violation of community control alleged appellant had violated two conditions of his community control. First, appellant was alleged to have violated Condition (16) of his community control order. This condition provided:
You will remain confined to your approved residence except for one-half hour before and after your approved employment, community service work or any other special activities approved by your Supervising Officer.
The evidence established that appellant worked as a handyman for Rick and Denise Smith. The Smiths owned a ten-acre parcel of land. Several buildings, including two rental residences, were located on the Smiths’ property. Appellant’s job duties included mowing, weeding, painting, and performing repairs.
Ms. Southall, appellant’s probation officer, had approved a work schedule whereby appellant was to complete his work day by 5:00 p.m. Therefore, on a normal work day, appellant would be required to be at his residence by 5:30 p.m. On the day in question, appellant arrived home, after working at his job, at 5:35 p.m. Appellant’s probation officer testified that his employers had advised her that appellant had left work that day at approximately 4:45 p.m. Thus, appellant would have been required to have been at his residence by 5:15 p.m.
Appellant testified he did not actually leave the Smiths’ property until after 5:00 p.m. Mrs. Smith testified that her husband had been mistaken in saying that he had left the premises, because appellant was actually in the back of the property putting up the mower. When she saw appellant, she told him that Ms. Southall had been by to see him. Mr. Smith did not testify.
The trial court found appellant’s tardy return to his residence constituted a willful and substantial violation of his probation. The trial court did not make a finding as to exactly how late appellant was in returning home.
To revoke a defendant’s probation, a court must find by the greater weight of the evidence that the defendant committed a willful and substantial violation of a term of his probation. The standard of review by an appellate court is abuse of discretion. State v. Carter, 835 So.2d 259, 262 (Fla.2002).
The evidence in this case was insufficient to establish that appellant was more than five minutes late. We can foresee instances where a five minute late arrival could constitute a material and substantial violation of community control. However, under the facts of this case, we find it was an abuse of discretion for the trial court to have found appellant willfully and materially violated Condition (16). Perez v. State, 884 So.2d 306 (Fla. 2d DCA 2004).
Second, appellant was alleged to have violated Condition (10) of his community control order. This condition required appellant to submit to random drug testing. The evidence reflects that appellant had been directed by his probation officer to provide a urine sample. He did so. In appellant’s presence, the probation officer performed a field test on the sample. The test results were positive for cocaine and barbiturates. Appellant denied he had used any illegal drugs. The probation officer then field tested the same sample again. This time the test results were negative. The probation officer then sent, the urine sample to Scientific Testing Laboratories, Inc. The laboratory report presented at trial reflected “Specimen Drug Status: NEGATIVE; Specimen Validity Status: DILUTE.” There was no evidence as to how the sample was allegedly diluted or the degree of the alleged dilution. There was no competent evi *116 dence[1] as to whether the laboratory result reflected an intentional effort by appellant to dilute his urine sample. The evidence was simply insufficient to support a finding that appellant had violated Condition (10).
REVERSED and REMANDED.
GRIFFIN and PALMER, JJ., concur.

. The record reflects the probation officer was clearly not qualified to give an expert opinion with regard to the meaning of a "dilute” result.